### 55386. McCRACKEN v. GAINESVILLE TRIBUNE, INC.

QUILLIAN, Presiding Judge.

Plaintiff McCracken appeals the grant of a motion for summary judgment for the defendant — The Gainesville Tribune. Plaintiff filed his complaint in two counts. The first count alleged Richard Spence made "slanderous and false statements" about him before the Hall County Commissioners of Roads & Revenues. The second count alleged the Tribune "maliciously printed the libel against him [the alleged slanderous remarks uttered by Mr. Spence] without regard for the truth and with a reckless disregard for the rights" of the plaintiff.

Mr. Spence appeared before the Hall County Commissioners of Roads & Revenues and requested the board to assume responsibility for maintenance of a road where he and the plaintiff McCracken owned property. There is no evidence in the record showing the exact words used by Mr. Spence, but an affidavit of Patti Cornett, publisher of the Tribune, used to support the defendant's motion for summary judgment, stated that she attended the board meeting and the story published in the Tribune "was a fair and honest report of the proceedings..." The published report quoted Mr. Spence as saying "Mr. McCracken is unscrupulous." One of the commissioners present at the meeting submitted an affidavit in which he stated that he heard the comments of Mr. Spence made

before the Board and he had read the article published in the Tribune under the by-line of Patti Cornett. He found "[t]he newspaper article to which I have just referred to above presents a fair and honest report of the proceedings of what occurred at said meeting. . ."

Mr. McCracken, in his affidavit, stated that the article printed by the Tribune referred to him as " 'an unscrupulous land grabber,' which reference is false, unfair, inaccurate and libelous."

The trial court granted summary judgment to the Tribune and Mr. McCracken brings this appeal. *Held:*

1. For reasons of public policy the law recognizes that certain communications and publications should be accorded a privileged status. *Atlanta News Pub. Co. v. Medlock,* 123 Ga. 714, 719 (51 SE 756). The privilege exists because it is more important that the public be informed about the privileged proceeding than it is for the defamed person to have legal recourse for the publication of the defamatory matter. Ashley, Say It Safely, 40. The public interest in being informed about public proceedings, public controversies, public officials and public figures, demands freedom of the press to report such events without assuming responsibility for what was said by the speaker. Edwards v. National Audubon Society, 556 F2d 113, 120 (2d Cir. 1977).

2. In the field of defamation, truth and absolute privilege are the only two complete defenses to publication of communications which would otherwise be slanderous or libelous. Privileged communications are divided into two classes — absolute and conditional (or qualified) "The characteristic feature of absolute, as distinguished from conditional, privilege is that in the former the question of malice is not open, all inquiry into good faith is closed." *Atlanta News Pub. Co. v. Medlock,* 123 Ga. 714 (3), supra. A conditional privilege is lost if maliciously made (*Shiver v. Valdosta Press,* 82 Ga. App. 406, 410 (61 SE2d 221)) even though the source of the communication is quoted (*Kirkland v. Constitution Pub. Co.,* 38 Ga. App. 632 (2) (144 SE 821)), for the law holds that " '[t]alebearers are as bad as talemakers.' " *Ivester v. Coe,* 33 Ga. App. 620 (6) (127 SE 790).

3. In Georgia the news media are privileged to

publish "[a] fair and honest report of the proceedings of legislative or judicial bodies. . ." Code § 105-704. Subsection (4) of Code § 105-709 reiterates this authorization. The Supreme Court has held that this privilege is conditional. *Fedderwitz v. Lamb,* 195 Ga. 691, 692 (25 SE2d 414).

We are satisfied that the Hall County Board of County Commissioners of Roads & Revenues possesses sufficient indicia of a legislative body to qualify it for privileged communications. See Code Ch. 23-8, Ga. L. 1935, p. 661 et seq.; Ga. L. 1962, pp. 1044-1046. See also *Pearce v. Brower,* 72 Ga. 243.

Our only issue is whether the qualifying phrase —"fair and honest report" refers only to accuracy or whether it includes additional requirements which must be met by the media. Webster defines "fair" as "characterized by frankness, honesty, impartiality, or candor. . ." He described "honest" as "characterized by integrity or fairness and straightforwardness in conduct — free from fraud or deception. . ." And a "report" as: "to give an account of, to relate, tell, narrate. . . to repeat, as something heard, said. . ." As the words "fair and honest" modify the word "report" it is clear that such "report" must be both impartial and accurate. See 53 CJS 201-202, Libel and Slander, § 123; 50 AmJur2d 772, Libel and Slander, § 254. What is demanded is "neutral reportage." See Edwards v. National Audubon Society, 556 F2d 113, 120 (1), supra. If the legislature had intended to place a heavier burden upon the republisher of legislative proceedings it could easily have done so by using words other than "fair and honest." We find no indication that the republisher has any burden except fairness, honesty, and accuracy. For this court to attach additional duties to such restrictive language would subvert our role of interpreter to that of legislator.

4. In support of defendant's motion for summary judgment it established that the published report was fair, honest, impartial and accurate. Plaintiff's rebuttal affidavit stated only that the "reference" to him in the article as an "unscrupulous land grabber" was "false, unfair, inaccurate and libelous. . ." Plaintiff's conclusions were apparently based on the fact that The Gainesville

Times' edition reporting this same meeting and the official minutes of the board did not contain this personal reference to him. We do not find this persuasive evidence that the publication complained of was not a fair and honest report of the same proceedings, even though the others were more dispassionate.

The defendant newspaper carried its burden of piercing the plaintiff's pleading by showing the statutory right to republish the proceedings and that they were "fair and honest." "Once the motion is supported by evidentiary matter showing a prima facie right in the movant to have judgment rendered in its favor, the duty is placed upon the opposing party to show the existence of a genuine issue of fact." *Goldsmith v. American Food Services,* 123 Ga. App. 353, 354 (181 SE2d 95). If the respondent does not present refuting evidence to raise an issue of fact, summary judgment must be granted for movant. *Richards v. Tolbert,* 232 Ga. 678 (208 SE2d 486). Mere conclusory allegations will not suffice to rebut movant's evidence. *Goodman v. St. Joseph's Infirmary,* 144 Ga. App. 614, 618 (241 SE2d 487). Neither will pleadings, unsupported by evidence, preclude grant of summary judgment. *Daniell v. Collins,* 222 Ga. 1 (148 SE 2d 295). The trial court did not err in granting summary judgment for defendant.

*Judgment affirmed. Webb and McMurray, JJ., concur.*

ARGUED MARCH 6, 1978 — DECIDED JUNE 19, 1978.

*Robert E. Andrews,* for appellant.
*Robinson, Harben, Armstrong & Millikan, Emory F. Robinson, Thompson, Fox & Brinson, Robert B. Thompson,* for appellee.