**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**August 20, 2013**

# In the Court of Appeals of Georgia

A13A1215. SAFEWAY INSURANCE COMPANY v. HANKS.

BOGGS, Judge.

Jimmie Lee Hanks sued "John Doe" to recover damages for injuries Hanks allegedly sustained in an automobile accident. Hanks served his uninsured motorist carrier, Safeway Insurance Company ("Safeway"), and Safeway filed an answer. A jury found in favor of Hanks and awarded him $13,000. Safeway appeals, alleging that the trial court erred in allowing testimony from Hanks' expert and erred in its charge to the jury on preexisting condition. We discern no error and affirm.

The record reveals that on February 9, 2002, an unknown driver rear-ended Hanks as Hanks waited to turn left at an intersection. The force of the collision caused Hanks' head to slam against the driver's-side window and propelled his car into the middle of the intersection. A "dazed" Hanks exited his vehicle and approached the

other driver's parked car on the side of the road. The driver apologized for the accident, but as Hanks returned to his car to record the tag number, the driver fled the scene. Hanks claimed injuries to his head, neck, back, and leg as a result of the car accident.

On February 15, 2002, Hanks began receiving treatment from a chiropractor for his lower back pain, and on November 11, 2002, he received magnetic resonance imaging (an "MRI") to ascertain the specific nature of the injury. A physician/diagnostic radiologist conducted Hanks' MRI and prepared a report of his interpretation of the results. He determined that Hanks suffered from a herniated disk in his lower back, and that the herniation "is possibly several months of age." Over Safeway's objection, the trial court allowed Hanks to tender the witness as a "radiology expert," and the witness testified by deposition.

1. Safeway argues that the trial court abused its discretion by allowing Hanks' expert to testify without requiring Hanks to prove the cause of the herniated disk.[1] Safeway contends that "in order for the MRI findings to be admissible, [Hanks] had to link the findings to the accident." We disagree.

---

[1]The expert stated specifically that he was not opining as to causation.

We review the trial court's decision to admit or exclude expert testimony under an abuse of discretion standard. *Butler v. Union Carbide Corp.*, 310 Ga. App. 21, 25 (1) (712 SE2d 537) (2011). The Georgia Supreme Court has held that

> expert evidence typically is not required to prove causation in a simple negligence case. However, expert evidence is required where a 'medical question' involving truly specialized medical knowledge (rather than the sort of medical knowledge that is within common understanding and experience) is needed to establish a causal link between the defendant's conduct and the plaintiff's injury.

(Citations omitted.) *Cowart v. Widener*, 287 Ga. 622 (697 SE2d 779) (2010). A back injury resulting from a car accident does not raise a medical question requiring expert testimony on causation. See *Jordan v. Smoot*, 191 Ga. App. 74, 74-75 (1) (380 SE2d 714) (1989) (holding expert testimony is unnecessary regarding cause of head and neck pain suffered from car accident because issue "is a matter which jurors must be credited with knowing by reason of common knowledge" (Emphasis omitted.))

Safeway argues that our decision in *Eberhart v. Morris Brown College*, 181 Ga. App. 516 (352 SE2d 832) (1987) controls here. "The *Eberhart* case, however, has been factually distinguished on a number of occasions." *Hutcheson v. Daniels*, 224 Ga. App. 560, 561 (1) (481 SE2d 567) (1997). In that case, we determined that a

3

"medical question" existed requiring expert testimony. *Eberhart*, supra, 181 Ga App. at 518 (1). The medical question was whether the appellant's prior football injury was a casual factor in his physical condition several years later. Id. We have drawn a clear distinction between the type of injury in *Eberhart* and those suffered in auto collisions, "where a lay jury could conclude from common knowledge that a causal connection existed in light of the short lapse between [the plaintiff's] accident and his onset of symptoms and receipt of medical treatment." *Hutcheson*, supra, 224 Ga. App. at 569.

Safeway also claims that our holding in *Magnan v. Miami Aircraft Support*, 217 Ga. App. 855 (459 SE2d 592) (1995) controls.

> In *Magnan*, the question presented involved the continuing, long-term nature of an eye injury sustained by a plaintiff who had been exposed to pesticides. We held that the plaintiff 'could not simply testify that the continuing eye problems were caused by the incident, but he was required to present expert medical testimony to make this showing. [Cits.]' Id. at 857 (2). This was especially true since the plaintiff's own physician testified that his initial eye injuries had healed and his later eye problems were not causally related by a reasonable probability. Id.

(Punctuation omitted.) *Hutcheson*, supra, 224 Ga. App. at 562 (1).

The facts in the present case are more akin to the facts in *Jordan* and *Hutcheson.* The question is simply whether Hanks' injury was caused by the collision. *Hutcheson*, supra. While the expert testified about the existence of the herniated disk and the length of time it possibly persisted, it was for the jury to determine whether a causal connection existed between the accident and Hanks' injuries. Id.; *Jordan*, supra, 191 Ga. App. at 74-75 (1). The trial court therefore did not abuse its discretion in allowing the expert's testimony.

2. Safeway also alleges that the trial court erred by charging the jury on the presence and aggravation of preexisting conditions because there was "no medical testimony linking any medical conditions to this accident or establishing that [Hanks] had any prior medical conditions which were aggravated by the accident."[2] But "a

[2]While the trial court's instructions to the jury were not taken down, the court agreed to charge the jury as follows:
> [i]f you should find that, at the time of the incident, the Plaintiff had any physical condition, ailment, or disease which was becoming apparent or was dormant, and if you should find that the Plaintiff received an injury as a result of the negligence of the Defendant, and that the injury resulted in any aggravation of a condition already pending, then the Plaintiff could recover damages for aggravation of the preexisting condition.

charge may be given when there is slight evidence to sustain it." *AT Systems Southeast v. Carnes*, 272 Ga. App. 671, 674 (3) (b) (613 SE2d 150) (2005).

There was evidence presented here that Hanks was involved in a car accident fifteen months earlier, and that he suffered injuries similar to the injuries suffered in the present case. The radiologist testified he was not surprised to learn that Hanks complained of back and leg pain following the earlier accident, and when asked how old he believed Hanks' "extrustion is," he stated that "a significant portion of [Hanks'] herniation has cured in the last several months, possibly the greater part of the year." This evidence was sufficient to support a jury instruction on preexisting condition, and the trial court did not err in so instructing the jury. See id.; *Meeks v. Cason*, 208 Ga. App. 658, 661 (2) (431 SE2d 407) (1993).

*Judgment affirmed. Doyle, P. J. and McFadden, J., concur.*